# In the United States Court of Federal Claims

No.  11-570 C

(Filed Under Seal:  January 24, 2012)

Reissued:  February 1, 2012[1]

_____

| | | |
|---|---|---|
| CRASSOCIATES, INC, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | Bid protest action; Motion for stay pending |
| v. | * | appeal; Standard for granting stay motion; |
| | * | Plaintiff has not demonstrated a substantial |
| THE UNITED STATES, | * | likelihood of prevailing on appeal; Equities |
| | * | do not weigh in favor of granting stay; |
| Defendant, | * | Desire to preserve competitive benefits of |
| | * | incumbency not enough to warrant stay; |
| and | * | Motion denied. |
| | * | |
| SPECTRUM HEALTHCARE | * | |
| RESOURCES, INC., | * | |
| | * | |
| Defendant-Intervenor. | * | |

_____

## ORDER

_____

*Kenneth Bernard Weckstein*, Brown Rudnick, LLP, Washington, D.C., for plaintiff.

*Michael Paul Goodman*, Civil Division, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

*Amy Laderberg O'Sullivan*, Crowell & Moring, LLP, Washington, D.C., for defendant-intervenor.

_____

[1]  An unredacted version of this order was issued under seal on January 24, 2012.  The parties were given an opportunity to propose redactions, but no such proposals were made. Nevertheless, the court has corrected minor typographical and drafting errors in the original order.

**ALLEGRA, Judge:**

On September 7, 2011, CRAssociates, Inc. (CRA) filed a complaint in this court seeking to enjoin Spectrum Healthcare Resources, Inc. (Spectrum) from performing on a health care contract that it had received from the U.S. Army (the Army). This court had enjoined a prior award of this contract. *See CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357 (2010). After that decision, the Army conducted further rounds of discussions with the parties and, after evaluating revised proposals, awarded the contract again to Spectrum. CRA again protested this decision by filing a complaint with this court. On December 23, 2011, this court denied plaintiff's motion for judgment on the administrative record and granted defendant's and Spectrum's cross-motions for judgment on the administrative record. Based on this decision, the court declined to enjoin performance of the contract. *CRAssociates, Inc. v. United States*, 2011 WL 7069610 (Fed. Cl. Dec. 23, 2011). On January 3, 2012, plaintiff appealed that decision to the Federal Circuit. That same day, it filed a motion to stay this court's judgment pending appeal, seeking to bar further performance of the contract by Spectrum. Per this court's order, defendant and Spectrum filed a response to that motion on January 7, 2012.

To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits, or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor. *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987). In deciding whether to grant a stay pending appeal, this court thus "assesses [the] movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987); *see also Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 513 (Fed. Cir. 1990).[2] These factors essentially act as a sliding scale – "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in its favor." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 387-88 (7th Cir. 1984); *see also Standard Havens Prods.*, 897 F.2d at 513.

In the memorandum supporting its motion, plaintiff reprises many of the arguments that this court has already carefully considered and rejected. Perhaps hinting at what will be its banner claim on appeal, plaintiff heavily emphasizes arguments that this court held plaintiff has waived: that Spectrum gained various unfair competitive advantages in the second award competition via its partial performance of the contract that was eventually set aside by the court. *See CRAssociates*, 2011 WL 7069610, at *12-13 (discussing this waiver point). In this regard, it reiterates its claims that, via that performance, Spectrum obtained unequal access to source selection and other nonpublic information, as well as an uncompetitive price advantage. Yet,

---

[2] The formulation in *E.I. du Pont* and *Standard Havens Prods.* essentially merges the four traditional stay factors, *to wit*, "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton*, 481 U.S. at 776; *see Standard Havens Prods.*, 897 F.2d at 513.

even this second time around, plaintiff fails adequately to explain why it stood by when these issues, which it had squarely raised in a letter to the Army regarding Spectrum's prior performance, were not addressed in any of the amendments made by the Army to the solicitation in question.[3]  It is telling that plaintiff did not argue that Spectrum would obtain these advantages when it sought, in the first protest before this court, to enjoin preliminarily the performance of the prior contract.  Perhaps these arguments would have convinced this court to provide the preliminary relief requested.  Instead, the court allowed Spectrum to proceed.  And it is that performance which plaintiff now asserts tainted the most recent award to Spectrum.  In a sense, then, plaintiff would have this court penalize Spectrum for its own twin failures – its failure to raise these potential harms in the first proceeding, while seeking to enjoin Spectrum from beginning to perform the prior contract, and, after that performance occurred, its failure to protest the solicitation before the Army made a new award decision based upon that document.  Because plaintiff failed to act *then*, this court believes that there is little likelihood that the Federal Circuit will allow plaintiff to raise belatedly these same arguments ***now***.[4]

But, what of the other substantive arguments made by plaintiff in support of a stay?  While it is hard to count all the proceedings before the GAO and this court that plaintiff has initiated, it appears that this protest is the twelfth – yes, an even dozen – filed by plaintiff with respect to the subject procurement.  The earlier of these protests were, in varying degrees,

---

[3]  Plaintiff now claims that although it knew that Spectrum was engaged in transition efforts, it did not know the specifics of those efforts before the second award decision.  This claim is pure sophistry.  CRA plainly knew that, in performing the transition contract, Spectrum would gain access to information and would be paid for that transition work.  And, as this court has previously noted, CRA complained about both matters to the Army when it indicated that it wanted to continue with the procurement.  *See CRAssociates*, 2011 WL 7069610, at *7.  That it did not know precisely what information Spectrum had gained or how much money Spectrum would be paid for its transition work does not, in this court's view, excuse CRA's failure to raise these issues in a timely protest.  Were the law otherwise, a claim regarding a patent error would never be waived, as it is almost always the case that a protester discovers more information about the impact of an alleged error after the award is made, either via a debriefing or in reviewing the administrative record generated for a protest.

[4]  In its memorandum, CRA contends that this court's waiver finding clashes with the GAO's jurisprudence on this issue.  *Per contra.*  In cases like this, the GAO has long held that a protester who is aware of the basis for a protest prior to an award decision has an obligation to protest that issue, rather than wait and see whether it receives the award.  *See Orbital Scis. Corp.*, 2008 WL 5790105 (Comp. Gen. Dec. 15, 2008) ("a protester who is already reasonably aware of a protest basis may not wait until it obtains additional information before filing the protest"); *Oak Ridge Associated Univs.-Recon.*, 90-1 CPD ¶ 513 (1990) ("a protester may not wait until it obtains additional information under FOIA pertaining to the protest before filing if it is already reasonably aware of the protest basis"); *Tek–Lite, Inc. – Recon.*, 89-2 CPD ¶ 76 (1989) ("A firm must file a protest as soon as it is or should be aware of the protest basis.").

successful and caused the Army to take various corrective actions – some voluntarily, others in response to this court's injunction. The successive and cascading effect of these protests, and the Army's corresponding responses thereto, has whittled down substantially the potential grounds on which plaintiff might object to the award decision here. Indeed, as a result of this winnowing process, plaintiff is left with three unenviable categories of claims: (i) direct challenges to the Army's exercise of its core discretion in conducting this procurement; (ii) not-so-subtle intimations that the Army's most recent award was done in bad faith; and (iii) peripheral matters that, with all due respect, amount to little more than contractual nitpicking. As this court has already demonstrated, as to the first category, plaintiff has failed to demonstrate that the agency acted in an arbitrary and capricious fashion; as to the second, it has failed to show by clear and convincing evidence that the Army's evaluation of the revised proposals was a pretext for awarding the contract to Spectrum; and as to the third, plaintiff has failed to show, *inter alia*, any prejudice. *See CRAssociates, Inc.*, 2011 WL 7069610, at *13-19. In its current brief, plaintiff offers no reason for this court to depart from its prior rulings – or to conclude, for that matter, that plaintiff will succeed on appeal. Accordingly, the court finds that plaintiff has demonstrated little, let alone a significant, likelihood of prevailing on its appeal.

Nor do the equities weigh in favor of granting a stay. Regarding irreparable harm, plaintiff avers that, if the contract is allowed to proceed, it may lose its employees to Spectrum or other competitors, will be forced to abandon its leased premises, and will lose the other competitive advantages of incumbency. But, these claims all have a decidedly hollow ring.

To begin with, the harms alleged by plaintiff are the sorts of things that any incumbent would experience upon the loss of a successor contract. If plaintiff is right that these typical types of harm warrant a stay pending appeal here, then such would be true for every incumbent who fails to obtain a successor contract. But, that is not the law. *See, e.g.*, *PGBA, LLC v. United States*, 60 Fed. Cl. 196, 221 (2004) ("reliance on the loss of its current employees as a basis for irreparable injury would require this court to consider any incumbent contractor's loss of a successor contract to be irreparable harm"); *San Diego Beverage & Kup v. United States*, 997 F. Supp. 1343, 1347 (S.D. Cal. 1998) ("In every procurement award there are generally more losers than winners. To find that a losing procurement participant suffers irreparable harm merely because it did not succeed with its contract proposal would create in the losing party an automatic right to injunctive relief."). No federal contractor has a right to maintain its incumbency in perpetuity. It follows, *a fortiori*, that the potential loss of the benefits of incumbency does not give plaintiff some sort of automatic right to a stay pending appeal.

This is not to say that plaintiff's individual allegations of harm ring true. For, they do not. For more than two years – since it filed its first bid protest with this court – plaintiff has been warning that its employees will flee to Spectrum if the latter is permitted to begin performance of the contract. But, over this entire period, which includes the time that Spectrum actually performed on the original contract, plaintiff has yet to provide any proof that this has happened to any significant degree or is likely to happen in the immediate future. Even now, after all that has transpired with this contract, CRA's stay motion speaks in hedging, futuristic terms – that its "existing staff *could* be dispersed;" that its staff would be "more likely to stay with CRA" if a stay were granted. Moreover, from the first time plaintiff raised this specter, the

court has never quite understood why any CRA employee who shifted to Spectrum would not immediately return to CRA should the latter ultimately obtain the contract in question. Plaintiff certainly has never convincingly explained why this would not happen.[5] The surmise and mere speculation it offers instead is simply not proof of irreparable harm. *See Gen. Patent Corp. v. Wi-Lan Inc.*, 2011 WL 5865194, at *6 (S.D.N.Y. Nov. 22, 2011) ("Mere speculation that the loss of a valuable employee will result in [irreparable harm] is insufficient to warrant an injunction." (quoting *Tradition Chile Agentes de Valores Ltda. v. ICAP Sec. USA LLC*, 2010 WL 185656, at *3 (S.D.N.Y. Jan. 12, 2010)); *see also Winter v. Nat. Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008) (noting that a plaintiff "seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction" (emphasis in original)).

Plaintiff next asseverates that its leases require the leaseholds to be occupied and that the loss of the contract could cause it to lose those facilities. But, if that is the case – and plaintiff has neglected to provide the court with copies of the lease provisions in question so as to confirm this – plaintiff has only itself to blame. No one else but plaintiff negotiated those leases. And, presumably, it could have negotiated terms that were sensitive to the stops and starts that are typical of the government procurement process. That CRA did not do so is a self-inflicted harm and, as such, not the sort of consideration that ought to give rise to a stay. *See Second City Music, Inc. v. City of Chicago, Ill.*, 333 F.3d 846, 850 (7th Cir. 2003) ("self-inflicted wounds are not irreparable injury"); *Salt Lake Tribune Pub. Co., LLC v. AT&T Corp.*, 320 F.3d 1081, 1106 ("[w]e will not consider a self-inflicted harm to be irreparable"); *see also* 11A Charles Alan Wright, Mary Kay Kane, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure 2948.1 (2d ed. 2011) ("Not surprisingly, a party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."). Moreover, as defendant intervenor has pointed out, there is no indication that plaintiff cannot now renegotiate its leases with its landlords to remain in possession of its facilities pending appeal. Any alleged harm on this count thus appears to be not irreparable, but rather reparable.

Of course, at the heart of CRA's arguments is that without a stay, it will lose the financial and competitive benefits of being an incumbent. But, this claim is again speculative, at least in terms of the real impact that progressing with the award will have on CRA's future ability to win a reprocurement. Should such a reprocurement be ordered, plaintiff will still have the experience and understanding developed in its past performance of the subject contract – knowledge that undoubtedly will be reflected in the technical portion of any new proposal. *See Sierra Military Health Servs., Inc. v. United States*, 58 Fed. Cl. 573, 582-83 (2003) (denying preliminary injunction to protect incumbent's competitive advantages). To be sure, without a stay, Spectrum will continue to gain experience in performing the subject contract – but it is difficult to see how that type of "harm," which, again, arises every time an incumbent loses a successor contract,

---

[5]   In its memorandum, plaintiff suggests that it will not lose its employees to Spectrum, but to third parties, because Spectrum's compensation is substandard. But, the latter claim is contradicted by the record. As this court has noted, the Army's most recent survey of professional compensation concluded that Spectrum's proposed compensation is higher for 51 of the 70 positions surveyed. *CRAssociates*, 2011 WL 7069610, at *9 n.5.

ought to warrant relief here.  *See Beta Analytics Intern., Inc. v. United States*, 69 Fed. Cl. 431, 433 (2005) (refusing to consider this aspect of incumbency in crafting bid protest relief).  It is conceivable that the cost advantage that plaintiff had over Spectrum, gained by having its medical facilities already in place, will be diminished by allowing Spectrum to proceed.  But, plaintiff has failed to explain why it has a right to maintain such an advantage – one that exists now solely because the Army was compelled to extend plaintiff's performance for more than two years through sole-source bridge contracts.  With this advantage *vel non*, plaintiff controls its own destiny – it can set its price in a future reprocurement (should one occur) at whatever reasonable level it thinks will allow it to be competitive.  Indeed, plaintiff's claims of irreparable harm in this regard are perhaps most significant for what they do not say.  CRA does not, in particular, assert that Spectrum's performance of the transition work will result in a *fait accompli* that would leave it unable to compete should the Federal Circuit reverse this court's order dismissing its protest.  *See Sierra Military Health Serv.*, 58 Fed. Cl. at 582-83.

Finally, the weighing of hardships does not favor a stay pending appeal.  In this regard, CRA essentially turns a blind eye to the harms that would befall defendant and Spectrum should a stay be granted.  Granting a stay would compel the Army to extend, yet again, CRA's performance via another sole-sourced, bridge contract.  And it would delay Spectrum's performance of the subject contract even though it has spent millions of dollars, for which it has yet to be reimbursed, maintaining employees, facilities and other capabilities necessary to perform its contract.  There can be but one supplier of the services currently required by the Army.  After a dozen protests, the advantages of performing this contract and the disadvantages of not, such as they are, represent a zero sum game – both parties cannot be on the plus side of this equation at the same time; the positives on one side must be counterbalanced by the negatives on the other.  Where there is such an equilibrium in benefits and costs, the law favors the party that has demonstrated it is right on the merits – *equitas sequitur legem.  See Univ. Research Co., LLC v. United States*, 65 Fed. Cl. 500, 514 (2005) ("Much of the harm asserted by the intervenor would have its natural counterpart in harm to the plaintiff were a preliminary injunction not granted . . . [Balance of hardships], as a practical matter is for this reason usually dominated by the likelihood of success factor.").  In short, further delay of the contract in question, the award of which has been years in the making, is unwarranted.

Based on the foregoing, the court hereby **DENIES** plaintiff's motion for a stay pending appeal.[6]

**IT IS SO ORDERED**.

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[6]   The court intends to unseal and publish this order after January 31, 2012.  On or before January 31, 2012, each party shall file proposed redactions to this order, with specific reasons therefor.